UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>          *Plaintiff*,<br><br>-against-<br><br>CONSUMER TAX ADVOCATE, LLC, doing business as DONE WITH DEBT; COUNTRYWIDE DEBT RELIEF LLC; LOOP HOLDINGS LLC; SUREFIRE BUSINESS LLC, doing business as DELVE DEBT RELIEF; VERIFY DEBT SOLUTIONS INC.,<br><br>          *Defendants*. | 1:23-cv-9229<br><br>**CLASS-ACTION**<br>**COMPLAINT** |

## INTRODUCTION

1. This action concerns Defendants' forcing of its advertisements on Plaintiff and thousands of other persons throughout the United States in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2. The allegations contained herein are based upon Plaintiff's personal knowledge as to himself and his own acts and experiences; and otherwise upon information and belief, including investigation.

3. Defendants, in the course of selling their services, utilized, in violation of the TCPA, thousands of telephone calls, to cellular telephone lines, using a pre-recorded message and/or an artificial voice.

4. Plaintiff brings this action individually and intends to maintain this action on behalf of all other persons to whose cellular telephone number one or more of the subject telephone calls were placed during the period beginning four years prior to the commencement of this action until the resolution of this action (hereinafter, Plaintiff and the other persons described in this paragraph are

1

referred to as the "Class," and each is referred to as a "Class Member").

5. Plaintiff seeks, individually, statutory damages and injunctive relief, and intends to seek the same relief on behalf of the other Class Members.

6. The term "person," as used in this Complaint, incorporates the definition of "person" provided by 47 U.S.C. Section 153 (39).

## PARTIES

7. Plaintiff, Todd C. Bank ("Bank"), is a resident of the Eastern District of New York.

8. Defendant, Consumer Tax Advocate, LLC, doing business as Done With Debt ("Done With Debt"), is a limited-liability company organized and existing under the laws of Wyoming, and has a principal place of business at 1 Jenner Street, Suite 175, Irvine, California 92618.

9. Defendant, Countrywide Debt Relief LLC ("Countrywide"), is a limited-liability company organized and existing under the laws of California, and has a principal place of business at 2 Corporate Park, Suite 201, Irvine, California 92606.

10. Defendant, Loop Holdings LLC ("Loop Holdings"), is a corporation organized and existing under the laws of California, and has a principal place of business at 260 Fox Hollow Circle, Morgan Hill, California 95037.

11. Defendant, Surefire Business LLC, doing business as Delve Debt Relief ("Delve"), is a limited-liability company organized and existing under the laws of Maryland, and has a principal place of business at 215 Schilling Circle, Hunt Valley, Maryland 21031.

12. Defendant, Verify Debt Solutions Inc. ("Verify"), is a corporation organized and existing under the laws of California, and has a principal place of business at 17291 Irvine Boulevard, Suite 250, Tustin California 92780.

## APPLICABLE LAW

13. The TCPA states that it is "unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14. Persons to whose telephone line a call is made in violation of 47 U.S.C. Section 227(b)(1)(A)(iii) may bring an action to enjoin such violations and to recover, for each violation, the greater of the monetary loss caused by the violation or $500. *See* 47 U.S.C. Section 227(b)(3). If the court finds that a defendant willfully or knowingly violated Section 227(b)(1), the court may increase the award by up to $1,000 per violation. *See id.*

15. The Federal Communications Commission ("FCC") is the agency that is authorized to issue regulations implementing the TCPA. *See* 47 U.S.C. § 227(b)(2).

16. The FCC requires that a telephone call that is made to a cellular telephone number be preceded by "prior express written consent" if the telephone call "includes or introduces an advertisement or constitutes telemarketing, using . . . an artificial or prerecorded voice." 47 C.F.R. § 64.1200(a)(2).

17. The TCPA and the FCC define "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5), 47 C.F.R. § 64.1200(f)(16).

18. The FCC defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).

19. In *Campbell-Ewald Company v. Gomez,* 577 U.S. 153, 168 (2016), the Supreme

3

Court noted that "the [FCC] has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations."

20. With respect to Section 227(b) of the TCPA, under which the present action arises, the FCC stated:

> [V]icarious[-]seller liability under federal common[-]law[-]agency principles is . . . available for violations of section 227(b). . . . [F]ederal statutory[-]tort actions, such as those authorized under the TCPA, customarily are construed to incorporate general common[-]law agency principles of vicarious liability where such a construction would advance statutory purposes and does not conflict with the statutory text.

*Id.* at 6586, ¶ 33 (footnote omitted).

21. The FCC explained:

> The classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." [Restatement (Third) of Agency § 1.01] Potential liability under general agency-related principles extends beyond classical agency, however. A principal may be liable in circumstances where a third party has apparent (if not actual) authority. [citing, in footnote, *Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-574 (1982)] Such "[a]pparent authority holds a principal accountable for the results of [a] third[]party['s] beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." [Restatement (Third) of Agency § 2.03, cmt. c] Other principles of agency law may support liability in particular cases. For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits. [Restatement (Third) of Agency § 4.01, cmt. d] Such ratification may occur "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences." [footnote stating, "[*i*]*d.* Thus, a seller may be bound by the unauthorized conduct of a telemarketer if the seller "is aware of ongoing conduct encompassing numerous acts by [the telemarketer]" and the seller "fail[s] to terminate," or, in some circumstances, "promot[es] or celebrat[es]" the telemarketer. *Id.*]

*DISH Network*, 28 FCC Rcd. at 6586-6587, ¶ 34.

22. Under federal principal-agency law, ratification is the principal's retroactive authorization of an act by a third party, whether or not such third party is an agent. *See* Restatement (Third) of Agency, § 4.01 (stating that ratification "may create a relationship of agency when none existed between the actor and the ratified at the time of the act").

23. To ratify an action, a principal must manifest assent to the action or engage in "other conduct indicative of consent by the principal." Restatement (Third) of Agency, § 4.01. For the assent to be effective, a principal must have "knowledge of material facts involved in the original act," Restatement (Third) of Agency § 4.06.

24. The FCC has addressed two types of actors: a "seller" and a "telemarketer." A "seller" is "the person or entity on whose behalf a [telemarketing] call or message is initiated," 47 C.F.R. § 64.1200(f)(9), and a "telemarketer" is "the person or entity that initiates a [telemarketing] call," *id.*, 47 C.F.R. § 64.1200(f)(11), by "tak[ing] the steps necessary to physically place a [telemarketing] call." *DISH Network LLC Declaratory Ruling*, 28 FCC Rcd. 6574, 6583, ¶ 26 (2013). The roles of seller and telemarketer can be separate, or "a seller can also be a telemarketer - *e.g.*, when the seller initiates a call on its own behalf." *DISH Network*, 28 FCC Rcd. at 6583, ¶ 27.

25. The FCC explained that "a seller does not necessarily initiate a call that is placed by a third-party telemarketer on the seller's behalf," but that such lack of initiation does not end [the] inquiry[,] [f]or even when a seller does not 'initiate' a call under the TCPA, . . . it may be held vicariously liable for certain third-party telemarketing calls." *Id.* at 6584, ¶ 28. More specifically, "the 'general common law' of agency-related principles . . .[,] 'rather than the law of any particular State,' should govern in construing the reach of the TCPA." *Id.* at 6587, ¶ 36, n.107, quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989).

26. The FCC has also found that "a seller may be bound by the unauthorized conduct of a telemarketer if the seller 'is aware of ongoing conduct encompassing numerous acts by [the

5

telemarketer]' and the seller 'fail[s] to terminate,' or, in some circumstances, 'promot[es] or celebrat[es]' the telemarketer." *Id.* at 6587, ¶ 34, n.104, quoting Restatement (Third) of Agency, § 4.01, cmt. d (2006). Furthermore:

> Reading the TCPA to incorporate baseline agency principles of vicarious liability with respect to violations of section 227(b) is consistent with judicial precedent. The TCPA was enacted primarily to protect consumers from unwanted telemarketing invasions. The private right of action provided in section 227(b)(3) gives consumers the power not only to seek compensation for the harms [that] unlawful telemarketing causes, but also to deter future unlawful invasions of privacy. In [*American Society of Mechanical Engineers, Inc. v.* *Hydrolevel Corp.*[, 456 U.S. 556 (1982)], the Supreme Court determined, in a private antitrust action under 15 U.S.C. § 15, that the statute permitted the imposition of liability against a trade association for the actions of its agents. Noting that a purpose of the statute was to deter anticompetitive actions, the Court held that *allowing vicarious liability*, in that case on the basis of apparent authority, would advance that goal because, if the trade association "is civilly liable for the antitrust violations of its agents acting with apparent authority, it is much more likely that similar antitrust violations will not occur in the future." The Court explained that "[o]nly [the trade association] can take systematic steps to make improper conduct on the part of all its agents unlikely, and the possibility of civil liability will inevitably be a powerful incentive for [it] to take those steps." By contrast, denying trade[-]association liability would allow the association to "avoid liability by ensuring that it remained ignorant of its agents' conduct," contrary to congressional intent that the "private right of action deter antitrust violations."

*Id.* at 6587, ¶ 36 (citations and footnotes omitted). *See also id.* at 6588, ¶ 36, n.107 ("federal[-]common[-]law principles of agency [do not] limit a principal's responsibility to circumstances in which formal agency exists and the principal exerts immediate direction and control. . . . [F]ederal common law of agency also extends to concepts such as apparent authority, when statutory goals would thereby be served," citing *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-574 (1982).

27. Further addressing the propriety of the "incorporat[ion] [of] baseline agency principles of vicarious liability with respect to violations of section 227(b)," *id*. at 6587, ¶ 36, the FCC

6

explained:

> This analysis applies comfortably to private rights of action for violations of section 227(b). As government and consumer commenters argue - and as the telemarketing industry acknowledges - the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer[-]protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law[-]enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the [Federal Trade Commission ("FTC")] noted, because "[s]ellers may have thousands of 'independent' marketers, . . . suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*Id.* at 6588, ¶ 37 (footnotes omitted). Accordingly, the FCC rejected "conten[tions] . . . that, except where the telemarketer is acting at the express direction and control of the seller with respect to the particular customer, imposition of vicarious liability would unacceptably heighten business risk by making liability unpredictable, unlimited[,] and uncontrollable." *Id.* at 6591, ¶ 43 (footnote and quotation marks omitted). As the FCC explained:

> We find these concerns to be misplaced. Sellers can simultaneously employ third-party telemarketers and protect their legitimate commercial interests by exercising reasonable diligence in selecting and monitoring reputable telemarketers and by including indemnification clauses in their contracts with those entities. Moreover, we disagree that imposing seller liability will increase unlawful telemarketing by reducing the incentives of third-party telemarketers to comply with TCPA restrictions. To the contrary, overall unlawful activities should be reduced, as sellers will have an incentive to carefully choose their telemarketers to ensure compliance and to force consistent violators out of the marketplace. Moreover, imposing vicarious liability on the seller would in no way absolve the

>       third-party telemarketer of joint liability. Thus, vicarious seller liability should not decrease telemarketers' incentives to obey TCPA restrictions.

*Id.* at 6591-6592, ¶ 44 (footnote omitted).

28.   The FCC concluded its discussion of vicarious liability as follows:

>       In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or . . . section 227(c), we stress that nothing in this order requires a consumer to provide proof - at the time it files its complaint - that the seller should be held vicariously liable for the offending call.

*Id.* at 6593, ¶ 47 (footnote omitted).

## **JURISDICTION AND VENUE**

29.   This Court has jurisdiction under 28 U.S.C. Section 1331.

30.   Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2).

## **FACTS**

31.   On or about October 13, 2023, a telephone call was placed to Bank ("Bank's Call").

32.   Bank's Call was made pursuant to contracts that Loop Holdings had with Countrywide, Done with Debt, Delve, and Verify.

33.   Bank's Call was made to a cellular telephone number.

34.   At all relevant times, Bank was a regular user of the cellular telephone number to which Bank's Call was made.

35.   Upon the answering of Bank's Call, a message was played that was obviously pre-

8

recorded, as it sounded robotic and did not ask to speak to any particular person; the message stated:

> Hi, this is Jordyn, and I am following up with the financial hardship department. I am not sure if you've spoken to an assigned agent regarding our hardship program, but I do see there is a good possibility for a hardship elimination, so what I am going to do is put this in a pending status. If you have about five minutes today, give us a call back so we can go over the details. My number is 1-888-803-0834. We are open until five today, Pacific time. Again, my number is 1-888-803-0834. Thank you.

36. Bank's Call included and introduced an advertisement.

37. Bank's Call constituted telemarketing.

38. Bank's Call was made without the prior express written consent of any person who had the legal right to provide such consent.

39. Thousands of recipients other than Bank received telephone calls that were identical or materially similar to Bank's Call and that were made without the prior express written consent of any person who had the legal right to provide such consent ("Additional Calls," and, together with Bank's Call, the "Class Calls").

40. The Class Calls temporarily caused the receiving telephone lines to be unavailable for other uses.

37. The Class Calls disturbed the peace, solitude, and tranquility of Bank and the other Class Members.

38. The Class Calls annoyed and frustrated Bank and the other Class Members.

39. The Class Calls were a nuisance to Bank and the other Class Members.

## CAUSE OF ACTION

40. Plaintiff repeats and re-alleges, and incorporates herein, each and every allegation contained in paragraphs "1" through "39" inclusive of this Complaint as if fully set forth herein.

41. The placement of the Class Calls violated 47 U.S.C. Section 227(b)(1)(A)(iii), as

9

further delineated by 47 C.F.R. § 64.1200(a)(2).

42. Bank and the other Class Members are entitled to an Order, pursuant to 47 U.S.C. Section 227(b)(3)(A), enjoining Defendants from violating 47 U.S.C. Section 227(b)(1)(A)(iii).

43. Bank and Class Members are entitled to statutory damages of $500 per violation pursuant to 47 U.S.C. Section 227(b)(3)(B).

44. In the event that Defendants willfully or knowingly violated 47 U.S.C. Section 227(b)(1)(A)(iii), Bank and the other Class Members are entitled up to an additional $1,000 per violation pursuant to 47 U.S.C. Sections 227(b)(3)(C).

## CLASS ALLEGATIONS

45. Bank brings this action individually, and intends to maintain this action, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), on behalf of all other persons to whose cellular telephone number one or more Class Calls were made during the period beginning four years prior to the commencement of this action until the resolution of this action (the "Class Period").

46. There are thousands of persons who are similarly situated to Bank and would therefore be Class Members.

47. Excluded from the Class are Defendants, any subsidiary or affiliate of Defendants, and the directors, officers, and employees of Defendants or of their subsidiaries and affiliates.

48. Bank's individual claims are, both factually and legally, typical of the putative claims of the other Class Members.

49. Bank would fairly and adequately protect the interests of the other Class Members. Bank has no interests that are antagonistic to, or in conflict with, the other Class Members. Indeed, Bank's interests are, for purposes of this litigation, coincident with the interests of the other Class Members.

50. A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy. Because the Class is so numerous that joinder of all Class Members is impracticable, and because the damages suffered by most of the individual Class Members are too small to render prosecution of the claims asserted herein economically feasible on an individual basis, the expense and burden of individual litigation makes it impractical for Class Members to adequately address the wrongs complained of herein. Bank knows of no impediments to the effective management of this action as a class action.

51.   Common questions of law and fact predominate over questions that affect only individual Class Members. Among those questions are:

(i)   whether telephone calls, to cellular telephone lines, were made for, or with the authority of, Defendants;

(ii)   whether Defendants violated Section 227(b)(1)(A)(iii) of the TCPA;

(iii)   whether Defendants willfully or knowingly violated Section 227(b)(1)(A)(iii) of the TCPA;

(iv)   whether the Class Members are entitled to damages as a result of Defendants' violations of Section 227(b)(1)(A)(iii) of the TCPA, and, if so, how much; and

(v)   whether the Class Members are entitled to injunctive relief as a result of Defendants' violations of Section 227(b)(1)(A)(iii) of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a)   Pursuant to 47 U.S.C. Section 227(b)(3)(A), an order enjoining Defendants from violating 47 U.S.C. Section 227(b)(1)(A)(iii);

(b)   Pursuant to 47 U.S.C. Section 227(b)(3)(B), statutory damages of $500 per violation of 47 U.S.C. Section 227(b)(1)(A)(iii) for Plaintiff and the other Class Members; and

(c)   Pursuant to 47 U.S.C. Section 227(b)(3)(C), up to $1,000 of statutory damages for Plaintiff and the other Class Members, in addition to the statutory damages prayed for in the preceding paragraph, in the event that the Court finds that Defendants knowingly or willfully violated

47 U.S.C. Section 227(b)(1)(A)(iii).

Dated: December 18, 2023

                                        Respectfully submitted,

                                        **s/ *Todd C. Bank***
                                        TODD C. BANK,
                                           ATTORNEY AT LAW, P.C.
                                        119-40 Union Turnpike
                                        Fourth Floor
                                        Kew Gardens, New York 11415
                                        (718) 520-7125
                                        By Todd C. Bank

                                        *Counsel to Plaintiff*